# LEVI C. MERRICK ET AL.

## v.

# ALVIN HULBERT.

1. TRUST DEED—EVIDENCE OF PAYMENT OF NOTE.—In a suit to set aside certain releases and to foreclose a deed of trust, an admission by the payee of the notes, while he held the notes and deed of trust, that a payment had been made to apply on said notes, though made prior to their maturity, is competent evidence of said payment against his assignee.

2. NOTICE—AGREEMENT.—In this case there was an agreement between the trustee and the payee to substitute a mode of payment not provided for in the instrument, and the payee, in case of sale of notes, was to inform his assignee of such arrangement; a payment was made after assignment in accordance with such arrangement but no notice given the assignee. *Held*, that such payment was ineffectual as against the assignee, and that the trustee had no authority to execute a release of the trust deed.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding. Opinion filed January 6, 1885.

This was a suit in equity brought by Alvin Hulbert against Levi C. Merrick and others, to set aside certain releases of a trust deed conveying the west five acres of block 20, section 19, township 39, north of range 14, east of the third principal meridian, in Cook county, and to foreclose said trust deed. It appears that the title to said land was formerly held by one Thomas Settle, in trust for Robert M. Douglas, of North Carolina, and his brother, Stephen A. Douglas, of Chicago, and that shortly prior to the execution of said trust deed, said Settle conveyed the entire title to said Robert M. Douglas. On the 20th day of May, 1879, said Robert M. Douglas, being indebted to Thomas B. Keogh in the sum of $7,000, executed his promissory note for that sum, payable to the order of said Keogh, five years after date, with interest at the rate of ten per cent. per annum, payable annually, and also coupon notes for said several installments of interest, and to secure said notes, said Robert M. Douglas and wife executed to said Stephen A. Douglas, as trustee, and to Myron A. Decker, his successor in trust, the trust deed in question.

Keogh seems to have been aware of Stephen A. Douglas' interest in the land at the time he took the trust deed. Shortly afterward he came to Chicago to place the instrument on record and to obtain Stephen's consent thereto. In the meantime Robert wrote to his brother in Chicago, explaining the transaction and asking him to allow the deed to go on record, and so when Keogh called, Stephen stated to him the substance of Robert's letter, but told him that the trust deed would so interfere with a disposition of the land in accordance with an arrangement between himself and Robert, by which they were to sell it in whole or in part, that he could not consent to it. Keogh then informed him that he had already placed the instrument on record. At this Stephen became angry and told Keogh that unless the trust deed was at once removed from the record, he would take the necessary steps to free his interest therefrom. Keogh thereupon urged that that was his brother's wish, and that it need not interfere with his, Stephen's, plans, as Robert's interest was worth more than the incumbrance; that all he wanted was his money, and that if he, Stephen, would allow the trust deed to remain, he, Keogh, would agree that he, Stephen, being the trustee, might release either the whole of the property or a part of it, as he might determine to sell it, on payment to him, or depositing in bank of Robert's proportionate part, and informing him of such deposit; that he, Keogh, still held the notes, and that if he should sell them, he would do so, subject to this understanding, and arrange with the assignee of the notes for such release. Upon this assurance and agreement, Stephen consented to allow the trust deed to remain of record.

On or shortly prior to March 17, 1880, said notes and trust deed still being held by Keogh, Stephen A. Douglas received an instrument in writing signed by Keogh, as follows:

GREENBORO, N. C., Feb'y 17, 188–.

STEPHEN A. DOUGLAS and }
   MYRON A. DECKER   } Trustees:

GENTLEMEN—Col. Robert M. Douglas having this day paid to me four thousand dollars on account of the coupon notes secured by deed of trust on real estate in the city of Chicago,

hereinafter described, you are hereby requested and authorized to release to said Robert M. Douglas an undivided half of the west five acres of block number twenty, in section number nineteen, township thirty-nine, north of range fourteen, east of the third principal meridian, and situate, lying and being in the city of Chicago and State of Illinois.

THOMAS B. KEOGH.

On the back of said instrument was indorsed a request signed by Robert M. Douglas, asking said trustees, or either of them, to release from the trust deed the undivided half of said land belonging to Stephen A. Douglas.

On said 17th day of March, 1880, after the receipt of said paper, Stephen A. Douglas, as trustee, executed and placed on record a release by which, in consideration of one dollar and other good and valuable considerations, the receipt of which was acknowledged, he released from the lien of the trust deed said undivided half of the land.

Robert then quitclaimed to Stephen the undivided half of the land, and afterward conveyed to him the north half, the latter deed reciting that it was executed in lieu of the former one. The interests thus acquired by Stephen were conveyed by him to one French, and while the title was thus held by French, Stephen executed a second release, which purported to be in lieu of the former one, by which he released said north half from the trust deed. This second release, though dated March 18, 1880, was not recorded until the 3d day of October following. French, shortly after the execution of said release, reconveyed the north half of said land back to Stephen A. Douglas.

The deed of trust and notes, shortly after their execution, were placed by Keogh in the hands of said Myron A. Decker for sa'e, but after ineffectual efforts to negotiate them, the wife of said Decker loaned Keogh $2,500, and the deed of trust and notes were placed in her hands as collateral to such loan.

About the time of the execution of the first release, Keogh, for the purpose of enabling the Douglas brothers to divide the land, paid the loan and said collaterals were thereupon returned to him. In June, 1880, he again placed them in

Decker's hands for sale, representing that nothing had been paid on them, and authorized him to sell them as a first lien on the entire tract for their full amount. The payment of $4,000 claimed to have been made, was not then indorsed on the notes.

In his attempts to dispose of said securities, Decker offered them to the complainant and represented to him that the property covered by the deed of trust had greatly appreciated in value, and was regarded by Keogh and Douglas as exorbitant security for the money; and the complainant, after examining the land and becoming satisfied as to its value, agreed to take all the notes except the first interest note, which was then overdue, at their face, with accrued interest, with the understanding, however, that he should relinquish an undivided half of the land whenever requested. On these conditions the complainant, on the 12th day of August, 1880, took an assignment of all of said notes, with the exception aforesaid, and paid therefor the sum of $7,080, he being, as he claims, wholly ignorant at the time of said payment of $4,000, and of the release of March 17, 1880, as well as of the other defenses to the deed of trust now set up by the defendants.

The bill alleges that, at the time of the purchase, Keogh was the owner of the interest note then past due, and that it was agreed between him and the complainant that said note should, in its participation in the security of the deed of trust, be postponed to the principal note and the other interest notes; but the evidence given by the complainant at the hearing showed that nothing whatever was said at the time in relation to said overdue note.

The entire five acre tract was afterward sold and conveyed to Mrs. Julia M. Jackson, for $7,250, subject to the balance of the incumbrance, the same being stated in the deed to be $4,000, which the grantee also assumed to pay as a part of the purchase money. Stephen A. Douglas, at or about the same time, deposited with the cashier of the Merchants' National Bank of Chicago the sum of $3,800, in payment of the balance of the amount due on said notes, that being the real bal-

ance of the notes as claimed by the defendants, and notified Keogh of such deposit, and thereupon, as trustee, he executed and placed on record a release in full of said deed of trust, Mrs. Jackson then conveyed said land to Levi C. Merrick and William H. Morehouse, by a deed with covenants of warranty against all incumbrances, for the sum of $13,000. The last mentioned deed bears date November 8, 1880, but the evidence tends to show that the foregoing conveyances were consummated at the same time, and that said deeds were in fact delivered November 9, 1880.

The deed of trust provided that, on failure to pay the principal or interest, or any part thereof, according to the tenor of said notes, the whole indebtedness should become due at the option of the holder of the notes. The second interest note not being paid at maturity, the complainant elected to declare the whole debt due, and thereupon commenced the present suit. The hearing in the court below was had on the pleadings and proofs, and a decree was rendered declaring said several releases, except the one dated March 17, 1880, to be fraudulent and void, and holding the deed of trust to be a first lien on the undivided half of said land. In computing the amount of said lien, the court disallowed the payment of $4,000 claimed to have been made to Keogh, as well as the amount deposited in the Merchants' National Bank. The amount found to be due was $10,059, and for this sum and costs the decree awarded a sale of the undivided half of said land. From this decree defendants Merrick and Morehouse have appealed to this court.

Mr. Henry Decker and Mr. J. D. Wallace, for appellants; that the assignee of a mortgage takes subject to all equities existing between the original parties so far as the security is concerned, cited Olds v. Cummings, 31 Ill. 188; Walker v. Dement, 42 Ill. 272; White v. Sutherland, 64 Ill. 181; Haskell v. Brown, 65 Ill. 29; McIntire v. Yates, 104 Ill. 491.

Appellants are innocent purchasers and should be protected: McNab v. Young, 81 Ill. 11; Gunnell v. Cockerill, 79 Ill. 79.

A trust deed and mortgage are substantially the same: Foster v. Strong, 5 Bradwell, 223; Abney v. Austin, 6 Bradwell, 53; Un. Mut. Life Ins. Co. v. White, 106 Ill. 67.

Messrs. MILLARD & SMITH, for appellee; that a trustee can not claim adversely or derive any benefit or deal with the trust property, to the prejudice of the *cestui que trust,* cited G. C. & S. R. R. Co. v. Kelly, 77 Ill. 434; O'Halloran v. Fitzgerald, 71 Ill. 54; Fast v. McPherson, 98 Ill. 497; Perry on Trusts, par. 195.

The deposit of money was not a payment under the facts and the law: Wheeler v. Guild, 20 Pick. 545; Davis v. Miller, 14 Gratt. 1; Coffman v. Bank of Ky., 41 Miss. 212; McClelland v. Bartlett, 3 Bradwell, 481; Mayo v. Moore, 28 Ill. 428; Reeves v. Scully, Walker's Chy. Pr. 248; Dutton v. Ives, 5 Mich. 515; Keohane v. Smith, 97 Ill. 156.

BAILEY, J.  Some question is made as to the sufficiency of the proof of the payment of $4,000 claimed to have been made by Robert M. Douglas to Keogh, February 17, 1880.  We think the evidence sufficient to show, *prima facie,* that the payment was made as claimed.  The evidence relied upon consists, mainly, of Keogh's admission in the paper of that date, addressed by him to the trustee, authorizing and requesting a release of an undivided one half of the land from the lien of the trust deed.  At that time the trust deed and notes were in Keogh's hands, or if they had not then been redeemed by him from their pledge to Mrs. Decker as security for her loan to him, they were redeemed shortly after, and were returned to him and remained in his possession, or in that of his agent, until sold to the complainant several months afterward.  But even while they were in Mrs. Decker's hands, where they had been deposited as collateral to a loan of only $2,500, his interest in them was such that an admission by him of payment was so far an admission against his interest as to be admissible as evidence against an assignee of said papers, who obtained them from him after they had been redeemed and returned to his possession.

The competency of such evidence in a case like this seems

to be well settled. Thorp v. Goewey, 85 Ill. 611; Sandifer v. Hoard, 59 Id. 246; Williams v. Judy, 3 Gilm. 282. In some of the cases, it is true, an exception is made in favor of the assignees before maturity of negotiable paper. This exception grows out of the rule exempting such paper, while in the hands of a *bona fide* assignee before maturity, from the operation of defenses existing between the original parties thereto. It can have no application, however, to suits upon non-negotiable choses in action. The present suit is not upon the notes which are negotiable, but upon the deed of trust, which is not; and we are therefore of the opinion that the admission of payment made by Keogh while he held the notes and deed of trust, though made prior to their maturity, is competent evidence against the complainant in this suit.

Keogh's admission was, in terms, that Robert M. Douglas, on the 17th day of February, 1880, paid him $4,000 to apply on said notes, and we find no evidence, either in the testimony of the witnesses or in the circumstances proved, which seems to us sufficient to rebut the evidence of payment furnished by such admission.

Are the defendants in this suit in a position to avail themselves of said payment as a defense, *pro tanto*, to the deed of trust? The doctrine announced in Olds v. Cummings, 31 Ill. 188, and repeatedly reiterated in subsequent cases, that an assignee of a mortgage takes the same subject to the defenses in equity existing between mortgagor and mortgagee, is too well settled in this State to admit of controversy. As said in Haskell v. Brown, 65 Ill. 29, "Where a resort is had to a court of equity to foreclose the mortgage, that court will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself, and this regardless of the fact that the assignee of the note may have purchased it in good faith and before maturity." This rule imposes no hardship on the complainant, since if he had desired to protect himself against latent equities, he could have inquired of the mortgagor before purchasing, whether there was any reason why the mortgage should not have been paid. The law imposed upon him the duty of making such inquiry, and charges

Merrick v. Hulbert.

him with knowledge of all such facts as he would in that manner have ascertained.

It is perhaps needless to say, that a deed of trust stands on the same footing in this respect as a mortgage. If Keogh had been complainant, it would unquestionably have been the duty of the court to apply the payment made to him in reduction of the amounts of the deed of trust. The complainant stands in no better position, and, as against him, the defendants should have been given the benefit of such payment. To this extent the decree is erroneous.

But we are of the opinion that the defendants are not entitled, as against the complainant, to an application of the money deposited in the bank by the trustee, as a payment on the deed of trust. There is no pretense that the complainant had any actual notice of such deposit, or of any agreement or arrangement between Keogh and the trustee, by virtue of which it is claimed such deposit was made. It clearly appears that it was not made until several months after the deed of trust and notes had been assigned to the complainant. It was of course then a matter which the complainant could not have ascertained by inquiry of either the maker of the deed of trust or any other party to the instrument at the time he purchased it, for it had not then taken place. Even if it was his duty to inquire of Keogh and the trustee to ascertain the existence of every equitable circumstance affecting the deed of trust, all he could have ascertained upon such inquiry would have been an arrangement between Keogh and the trustee, to which, so far as appears, the maker of the instrument was not a party, by which an attempt was made to substitute a mode of payment not provided for in the instrument itself. That was, in brief, an arrangement by which the trustee was to be allowed at any time to release the whole or any part of the premises, by paying the whole of the money or a portion corresponding to the part released, such payment to be made directly to Keogh, or by depositing the money in a bank and giving notice to him of such deposit. And it was further agreed that, in case Keogh sold the notes, he would do so subject to the same understanding, and arrange with the assignee for such release.

Now if this was a valid and binding agreement, enforceable against the complainant as well as against Keogh, a question which we shall not attempt to decide, it was by fair construction an agreement by which, in case of an assignment of the notes, Keogh was to arrange for a substitution of the assignee for himself, so that the payment stipulated for should be made to the assignee, or in case of a deposit of the money in a bank, that the notice of such deposit should be given to the assignee. No claim is made that any notice of the deposit was given to the complainant, and therefore, by the very terms of the agreement, the payment was ineffectual, and no authority was obtained therefrom by the trustee to release the deed of trust.

Nor can it be said that the appellants are to be protected as innocent purchasers of the land. The release of the deed of trust and the conveyance to them were simultaneous acts. The deed of trust was of record so as to charge them with constructive notice up to the very instant of their purchase, and having notice of the existence of the deed of trust, they are chargeable with notice of the complainant's rights under it.

On this branch of the case we think the court below decided correctly, but for the error in refusing to allow the defendants the benefit of the $4,000 payment to Keogh, the decree will be reversed and the cause remanded for further proceedings.

Decree reversed.