JACOB DEACH, Respondent, *v.* WILLIAM H. PERRY, Appellant.

*N. Y. Supreme Court, Fourth Department, General Term, July 20, 1889.*

1. *Referee.   Question of fact.*—Where a fair question of fact, upon conflicting evidence, is presented for the consideration of a referee, and his finding of fact is not contrary to the weight of the evidence, the general term will accept his finding of fact.
2. *Assignment.   When sufficient.*—An assignment, which recites the transfer and consideration in general terms, is sufficient to carry the claim to the assignee, even though no actual consideration was paid therefor by him to the assignor; the legal title is sufficient to enable him to maintain an action.
3. *Same. Payment to assignor before notice.*—A payment of an assigned claim by the debtor to the assignor, without any knowledge that the claim had been assigned, is valid.

Appeal from a judgment entered upon the report of a referee.

The case contains all the evidence.   (Fols. 5 and 124.)

*H. Clay Hall*, for appellant.

*Willard Rinkle*, for respondent.

HARDIN, P. J.—Appellant's first point is, that the referee erred in finding " That the several accounts (mentioned in the second count of the complaint), and each of them, were duly assigned by written instruments to the plaintiff before the commencement of this action," and his argument is, that there is no sufficient evidence that the accounts, or any of them, were assigned before the commencement of the action.

*First.* The complaint contains the positive averment that the accounts were assigned before the commencement of the action.

The answer contains only a denial of knowledge or information sufficient to form a belief as to whether or not the persons named in the second subdivision of the plaintiff's complaint ever sold or assigned the claims therein to the plaintiff. It contains no affirmative defence on the subject of the ownership of the claims.

Upon the trial, plaintiff produced written assignments, marked exhibits 2 to 9 inclusive, which purported to be executed by the several persons referred to in the complaint. These several assignments bear date November 2, 1887. Presumptively, the assignments were executed on the day they bear date.

The plaintiff testified that Mehl, Wilbert, Herrig, Simon Deach, William Nuffer, Albert Hoeglin, George Seifert, Fred Seifert, Adam Horn, Henry Fike and William Herrig worked for the defendant loading a boat load of ice. He also testified, viz.: "I saw Wilbert sign his name to it" (referring to exhibit 2), which was then offered in evidence, and follows:

"WILLIAM PERRY, *to* HERMAN WILBERT, Dr.
"1887.
"To ten hours' work, at 15 cts. . . . . . . . . . . . . $1.50


"For value received, I hereby sell, assign and transfer the foregoing account to Jacob Deach.
"Dated Nov. 2, 1887.
"HERMAN WILBERT."


The other assignments embracing the exhibits from 2 to 9 inclusive were like the one which has just been given *mutatis mutandis*. The witness continued, viz.: "The assignments were not two days apart; I returned them to you (Mr. Rinckle) the next day after they were all assigned; they were signed long before the commencement of this action; a month before." Folio 25.)

In the course of the cross-examination, he stated on re-
ferring to the exhibits 2 to 9, inclusive, " These assignments
were signed the same day he gave them to me ; about the
tenth or fifteenth of November these papers were signed ;
Christian Herrig signed the last one in his own house ; had
only Christian's with me ; the rest were at my house."

The plaintiff on being re-called as a witness, testified,
viz. : " The day after November election I came down and
got those assignments and they were signed same night
and next day."

Inasmuch as election day was the 9th of November, 1887,
it is apparent that the testimony of the plaintiff was some-
what inaccurate and vague, if not intentionally false, as to
the date when the assignments were executed. It appears
from his evidence that he is unable to read writing (case, fol.
45); however, there is some other evidence found in the
appeal book which bears upon the question when the as-
signments were executed. Mr. Rinkle, the attorney for
the plaintiff, was called as a witness, and, after testifying
that the action was commenced by the service of a sum-
mons on November 11, 1887, he adds (fol. 53) : " These
assignments of the causes of action (being exhibits 2 to 9
inclusive), in second count of complaint, were returned to
me about a week before the commencement of that action
as they are now. I showed them to Mr. Perry on the day
the summons was served." This evidence is very pointed
and important and apparently sustains the date mentioned
in the assignments as the one when they were executed.
However, in considering this evidence it is important to
bear in mind that the defendant when upon the stand as a
witness, testified, viz.: " I remember coming in your (Mr.
Rinkle's) office before the suit was brought; I came in the
day the summons was served ; to my knowledge you did
not show me those assignments; you might have said all
the accounts were assigned to Mr. Jacob Deach; the day
the summons was served I did not see those papers

(exhibits 2, 3, 4, etc.); you did not, to my knowledge, say 'here are the accounts;' you told me, on several occasions afterward, that the accounts were all assigned to Mr, Deach."

Upon the evidence which we have referred to, we think a fair question of fact for the consideration of the referee was presented as to when the assignments were executed, whether before or after the commencement of the action. The referee has found that they were assigned before the action was commenced. A careful inspection of the evidence has not led us to the conclusion that the referee committed an error, or that his findings were contrary to the weight of the evidence. He saw the witnesses, heard their testimony, and was quite as well capable of determining where the truth was in respect to the date of the execution of the assignments, as judges can be in reading the testimony found in the appeal book. We must therefore accept his finding of fact, and hold that the appellants' first point is unavailing.

*Second.* We think the form of the assignments entirely sufficient to carry the respective accounts to the plaintiff. Whether they were made for an actual consideration paid by the plaintiff to the assignors is not important; it is sufficient that the plaintiff had the legal title to the accounts at the time of the commencement of the action. A payment to the plaintiff would discharge the defendant; a recovery by the plaintiff, and a payment of the recovery by the defendant would discharge his liability. They were claims which might be transferred. Code Civ. Pro., § 1910.

In Hays *v.* Hathorn (74 N. Y. 486), in addition to the denial of the transfer of the note and also a denial that the plaintiff was the legal holder and owner thereof, or was the real party in the suit, it was alleged that the note was transferred to another, who was owner and holder, and the real party in interest, and it was held that a production of the instrument was *prima facie* evidence of the plaint-

iff's title, although it was said the defendants had a right
to offer evidence to rebut that presumption. The case is
quite unlike the one before us. This case is more like
Allen v. Brown (44 N. Y. 228), where it was held that as
against the plaintiff holding legal title to the claim by
written assignment valid " upon its face," the debtor can-
not raise the question as to " the consideration for such as-
signment, or the equities between the assignor and as-
signee." That case was referred to with approval by HAND,
J., in Hays v. Hathorn (supra).

In Eaton v. Alger (47 N. Y. 345), it was held that where
a note had been delivered to the plaintiff " upon his under-
taking to collect at his own expense," and to pay to such
person upon its collection, a certain sum of money, that the
party was the real party in interest; and in Sheridan v.
Mayor (68 N. Y. 30), it was held that " the plaintiff, hold-
ing the written assignment of the claim to himself valid on
its face, obtained the legal title and was the real party in
interest, notwithstanding the fact that the assignment was
without consideration and merely colorable as between him
and the original claimant."

In referring to that case Judge HAND says, in Hays v.
Hathorn (74 N. Y. 490), viz.: " Such assignment is ex-
pressly declared to protect the debtor paying the assignee
against the subsequent suit by the assignor." The reversal
in Hays v. Hathorn (supra) was put upon the ground of
the rejection of proof tending to disprove any ownership or
interest whatever in the " plaintiff." Here the plaintiff
testified viz.: " In regard to the assignments, they hold me
responsible whether I collect or not; they are not to pay
any costs whether I collect or not." Further on the plaint-
iff does say, in his testimony, viz.: " Well, if I get the
money I will pay them." We think the referee was war-
ranted in finding that the plaintiff was the owner of the
demands assigned to him.

*Third.* The appellant makes a point that the plaintiff

was not the owner of the claims of Adam Horn and William Nuffer. Upon the subject of the ownership of those claims, the testimony of the plaintiff is as follows : " Adam Horn told me to collect his account; I bought it from him. William Nuffer told me the same. He told me : ' I'll hold you responsible for it and you've got to pay me for it.' I hired him." It appears that the amount of the Horn claim was $2.55 and that of William Nuffer was forty-five cents. As the evidence which we have quoted was all there was upon the subject of the ownership by the plaintiff, of the two demands, we think the referee was warranted in finding in favor of plaintiff in respect to those two demands.

*Fourth.* It appears by the evidence that the defendant paid George Mehl the amount of his claim, $1.50. The referee finds that the defendant made the payment, and the defendant testified that he made that payment without any knowledge that the claim had been assigned to the plaintiff. (Fol. 62.) We think the defendant ought not to have been charged with the Mehl account. Code Civ. Pro., § 1909. We also think that he should not have been charged with the Chris John Herrig account, which amounted to $1.50, and as we understand the referee's report, the gross sum of $57.58 includes both of those items. We therefore think the report and judgment thereon should be modified by striking out $3.00, together with the interest thereon from the 11th day of November, 1887, which apparently has been allowed to the plaintiff.

*Fifth.* The referee allowed the plaintiff to recover for sixty-one hours' work at fifteen cents an hour. Plaintiff testified at fol. 46, viz : " I know of my own knowledge I worked fifty-one hours between August 13th and 25th." It appears that the memoranda of the hours' work by the plaintiff were kept in a book by his daughter; she was not produced as a witness, and no satisfactory reason was given why she was not called to testify to the correctness of the memoranda made by her. The plaintiff testified, (fol. 45 :) " I

cannot read writing; I saw my daughter write down those days; I can't read those days, but I can read the figures and I know they are down correct." We think, under the circumstances, the plaintiff did not establish satisfactorily that he had worked more than fifty-one hours. We are, therefore, inclined to deduct from the referee's report ten hours' work at fifteen cents an hour, amounting to $1.50.

*Sixth.* We think the defendant is not entitled to have credit for the tow-line; the testimony of the plaintiff is, he was requested by the defendant to furnish it, and that subsequently he asked the defendant for the line, and the defendant replied, " he would pay me for it." (Fol. 32.)

*Seventh.* We think the referee was warranted in charging the defendant with the value of the globe lamp; the defendant received it from the plaintiff and continued to use it, and when the plaintiff asked for it he was told by the defendant's servant that if it was taken away that they would not have any left to use, and the testimony is to the effect that the defendant asked the plaintiff to furnish " anything the boat needed." (Fol. 13).

We, therefore, think the referee properly allowed the plaintiff to recover seventy-five cents for the globe lamp.

Judgment reversed and a new trial ordered before another referee, with costs to abide the event, unless the plaintiff shall stipulate to reduce the report and judgment the sum of $4.50 and the interest thereon from the date of the referee's report; in which event the report and judgment, as so modified, are affirmed, without costs of the appeal to either party.

MARTIN and MERWIN, JJ., concur.