[No. 2020]

WASHOE COUNTY BANK (A CORPORATION), APPEL-
LANT, *v.* W. C. CAMPBELL, N. L. WATTON, AND
T. A. BECHTOL, RESPONDENTS.

[168 Pac. 643]

1. LANDLORD AND TENANT — NOTICE — ASSIGNMENT OF RENTS —
INTEREST IN REALTY—EFFECT—"ESTATE OR INTEREST IN LAND."
The lessor's assignment of "all rents due and to become due
under" a certain lease was not an assignment in itself of the
lease, and did not create an estate or interest in the lands
within Rev. Laws, 1038, 1039, 1069, stating the requisites of
an instrument affecting the estates or interests in lands and of
recordation in order to constitute notice.

2. LANDLORD AND TENANT—INTEREST IN LANDS—ASSIGNMENT OF
RENTS—NOTICE.
Such an assignment does not, when recorded, constitute
notice to the lessees of the assignment.

3. ASSIGNMENTS—NECESSITY OF NOTICE.
Until the debtor receives notice of an assignment, or until
he has knowledge of such facts concerning the same as are
sufficient to put him on inquiry, he may deal with the assignor
as though no assignment had been made.

4. LANDLORD AND TENANT — ASSIGNMENT OF RENTS — RIGHTS OF
LESSEE.
In the absence of actual or constructive notice to the lessees
of an assignment of the rent due or to become due, they could
interpose against the assignee any defenses maintainable
against the lessor.

5. LANDLORD AND TENANT—LIABILITY FOR RENT—EVIDENCE—SUFFI-
CIENCY.
Where the landlord and his assignee of rents after lessees
failed to pay the rents negotiated with other parties who subse-
quently went on the premises and paid the rent after the
assignee was told by the lessees that a third person would
assume the lease and made no objection, the landlord and the
assignee were estopped to sue the lessees for the rent.

6. LANDLORD AND TENANT—SURRENDER OF LEASE—OPERATION OF
LAW.
Where a landlord grants a new lease to a stranger with the
assent of the tenant during the existence of an outstanding
lease, and the tenant gives up his own possession to the stranger,
who thereafter pays rent, or where in any other way a new
tenant is by agreement of the tenant and the landlord substituted
and accepted in place of the old, there is a surrender by opera-
tion of law.

7. LANDLORD AND TENANT—ACTIONS FOR RENT—EVIDENCE—ADMIS-
SIBILITY.
In action of the landlord's assignee for rent, it is proper for
the trial court to consider the occupancy of the premises and

payment of the rentals by other parties than the original lessee when such facts were known and acknowledged by the lessor.

8. LANDLORD AND TENANT—ACTIONS FOR RENT—EVIDENCE—ADMISSIBILITY.

Where the lessees in an action by the landlord's assignee for rent claimed a release by operation of law, it was proper for the trial court to consider occupation of premises and payment of rentals by third persons with the knowledge of the landlord.

9. LANDLORD AND TENANT—SURRENDER OF PREMISES—ACQUIESCENCE—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain finding that the lessees delivered up possession of the premises to a third person, notifying the person to whom they had been accustomed to pay rentals, and that the third person continued in possession and made at least one rent payment to such agent.

10. APPEAL AND ERROR—SCOPE OF REVIEW—CONFLICTING EVIDENCE.

Where the evidence was conflicting, but the judgment of the trial court was supported by substantial evidence, its conclusion should not be disturbed.

APPEAL from Second Judicial District Court, Washoe County; *John S. Orr,* Judge.

Action by the Washoe County Bank, a corporation, against W. C. Campbell and others. From the judgment rendered, plaintiff appeals. **Affirmed,** COLEMAN, J., dissenting.

*Cheney, Downer, Price & Hawkins,* for Appellant:

An oral lease of lands for more than one year is void; likewise an oral surrender of a lease, covering a period of more than one year, is equally void. (Cutting's Compiled Laws, sec. 2694.) The acceptance of rent from another tenant, even with knowledge that a substitution was claimed, will not amount to a surrender by operation of law. A leasehold interest in land for more than one year can no more be surrendered than it can be created by parol. (*Rees* v. *Lowy,* 59 N. W. 310; *Chicago Attachment Co.* v. *Davis Sewing Machine Co.,* 15 L. R. A. 754; *Johnson* v. *Reading,* 36 Mo. App. 306; *Welch* v. *Schuyler,* 6 Daly, 412.)

The assignment was recorded. It is contended that the assignment was not such an instrument as could properly be recorded, because it did not affect real estate. Our statute provides that among the documents that may

be recorded is any instrument of writing "whereby any real estate may be affected." (Cutting's Compiled Laws, sec. 2663.)

Unless a contract of lease is distinctly to be held to be a unilateral contract, the obligations assumed by the tenant are just as binding as those assumed by the landlord, and each should receive the protection of the law.

*Boyd & Salisbury,* for Respondents:

The law is well settled that unless an instrument which comes fairly within the scope of the recording acts, the recordation of the same is a futile and unnecessary act, and has no effect whatsoever upon the rights of the parties. (Cutting's Compiled Laws, secs. 2663, 2664.) Constructive notice is entirely a creature of statute. Its effect is to be gathered from the construction of the statute. (*Grellet* v. *Heilshorn,* 4 Nev. 526.) Where the statute does not authorize the registry of assignments of choses in action, the filing and recording of them imparts no notice to any one. (4 Cyc. 60; Am. & Eng. Ency. Law, 77, 78.)

Until the debtor receives notice of an assignment, or until he has knowledge of such facts concerning the same as are sufficient to put him on inquiry, he may deal with the assignor as though no assignment has been made, and the assignment makes the chose subject to arrangements made between the debtor and the assignor prior to the time when the debtor receives notice of the assignment. (4 Cyc. 88; 2 Am. & Eng. Ency. Law, 1077, 1099.) A leasehold interest is merely a chattel real, and the rules which govern conveyances of real property do not apply to assignments of estates for years, but they are governed generally by the rules applicable to sales of personal property. (*Jeffries* v. *Easton, Eldridge & Co.,* 113 Cal. 345.) A leasehold interest is not real estate. (*People* v. *Bennett,* 14 Hun, 63.)

"A surrender is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply

that they have both agreed to consider the surrender as made." (24 Cyc. 1367.)

The grounds of accident and surprise, as a motion for a new trial, will not avail the moving party unless the party has, during the trial of the action and when taken by surprise, moved for a continuance for a sufficient length of time to enable such party to meet the evidence by which he claims to have been surprised. (*Heath* v. *Scott*, 65 Cal. 548; *Schellhouse* v. *Bell*, 29 Cal. 605; *Delmas* v. *Martin*, 39 Cal. 555; *Perrer* v. *Mutual Ins. Co.*, 47 Cal. 416.) A motion for a new trial will not be granted upon the ground of newly discovered evidence unless it be shown that a different result would probably be obtained upon a new trial. (*Oberlander* v. *Fixen*, 129 Cal. 690.) It must be further shown that diligence has been exercised in attempting to procure the testimony at the time of the trial. (*Tibbet* v. *Sue*, 125 Cal. 544.)

By the Court, McCARRAN, C. J.:

The respondents were the lessees of Mrs. L. E. Alexander Shannon. The premises leased were known as the Alexander Ranch, situated in Washoe County. Some time after the making of the lease, the lessor made an assignment to the Washoe County Bank, appellant here, which assignment is as follows:

"Know all men by these presents, that I, L. E. A. Shannon, the party of the first part in that certain lease hereinafter described, for and in consideration of the sum of ten dollars to me in hand paid by Washoe County Bank, the receipt whereof is hereby acknowledged, and for other valuable considerations moving to me from said Washoe County Bank, do by these presents assign, set over and transfer to said Washoe County Bank all rents due and to become due under that lease made on the 3d day of March, 1908, between me, the party of the first part therein, and W. C. Campbell, N. L. Watton, and T. A. Bechtol, the parties of the second part therein, wherein I leased to the parties of the second part the Alexander Ranch for the term of

five years next ensuing the date thereof at a monthly rental of $66.75, payable in advance on the first day of each and every month. And I hereby authorize and direct said Washoe County Bank to collect said rentals and to take such action, legal or otherwise, as may be necessary for the collection thereof; and I further direct that upon the collection of said rents, or any portion thereof, the same shall be applied by said Washoe County Bank upon the indebtedness due from me to said bank."

It is alleged in appellant's complaint that the defendants here, the lessees of Mrs. Shannon, were notified of the assignment of the rentals, and in this respect it is averred that pursuant to said notice the respondents paid the rental to plaintiff to and including the month of August, 1909. This action was commenced by the appellant bank to recover from the respondents the rental of the premises from the 1st day of September, 1909, to the 1st day of September, 1910, and in their complaint they allege:

"That on or about the 24th day of June, 1909, said L. E. Alexander Shannon, for a valuable consideration, and by an instrument in writing, assigned and set over to Washoe County Bank, the plaintiff herein, all the rents due and to thereafter become due under and by virtue of said lease, and by the terms of said instrument in writing authorized and directed the said Washoe County Bank to collect said rentals and to take such action, legal or otherwise, as might be necessary for the collection thereof. That said instrument in writing was filed for record in the office of the county recorder in Washoe County, Nevada, on the 25th day of June, 1909, where the same is of record in Book C of Leases at page 409."

By their answer the respondents deny ever having received notice, either actual or constructive, of the execution of this assignment. It appears from the record that the assignment, being acknowledged before a notary public, was recorded in the office of the county recorder of Washoe County. In the court below appellant sought

to establish notice to respondents, both actual and constructive. They sought to support their claim of actual notice by the testimony of the witness, Fred Stadtmuller, assistant cashier of the appellant corporation; and they contend here, as in the court below, that the recorded assignment constituted constructive notice to respondents. It will suffice to say here with reference to the testimony of the witness Fred Stadtmuller that the same was most unsatisfactory. The most that could be maintained for the testimony of this witness is that he believed that notice had been mailed to respondents, basing his belief upon the custom of the bank in such matters. He was unable to produce a copy of the notice, and refused to positively state that he had sent the same through the mails, or that the same had been in any wise delivered to respondents or either of them.

The trial court found, and in our judgment properly so, that the respondents had never received notice, either actual or constructive, of the execution of the assignment. In support of their contention that respondents were chargeable with constructive notice as to the assignment, appellants refer us to the sections of our code, as follows:

"No estate, or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing." (Section 1069, Revised Laws, 1912.)

Section 1038, Revised Laws, provides:

"Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate, or whereby any real estate may be affected, proved, acknowledged, and certified in the manner prescribed in this act, to operate as notice to

third persons, shall be recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such record."

Section 1039, Revised Laws, provides:

"Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded in the manner prescribed in this act, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice."

It is contended that by this statute is prescribed a rule governing the creation and surrendering of all interests in lands; that by this statute is prescribed a character of evidence which is exclusive when proof is required that a lease of lands for more than one year has been created or extinguished. The facts presented in the case bearing upon the acts and conduct of the parties, and the significant language of the assignment, removes the matter from the operation of this statute.

1. It will be observed from the language of the assignment that it was not one which could be construed as assigning the lease itself. The language of the assignment is plain and unambiguous. It assigns "all rents due and to become due under that lease made on the 3d day of March, 1908." The assignment of rents due and to become due does not constitute an assignment of the instrument itself. (*Ramsey* v. *Johnson*, 8 Wyo. 476, 58 Pac. 755, 80 Am. St. Rep. 948.) The authorities are quite uniform in holding that a mere assignment of moneys due or to become due under a contract is not an assignment of the contract itself. (*National Surety Co.* v. *Maag*, 43 Ind. App. 16, 86 N. E. 862; *In Re Wright*, 157 Fed. 544, 85 C. C. A. 206, 18 L. R. A. n. s. 193; *Dickson* v. *City of St. Paul*, 97 Minn. 258, 106 N. W. 1053; *Fortunato* v. *Patten*, 147 N. Y. 277, 41 N. E. 572; *Butler* v. *San Francisco Gas & Electric Co.*, 168 Cal. 32, 141 Pac. 818.)

2. An assignment of the rents due and to become due,

affecting only the rentals to be collected and not the lease under which such rentals are collected, does not create an estate or interest in lands such as is contemplated by the section of our statute above quoted. Its recordation, therefore, not being contemplated by the statute, constituted no notice to respondents of the assignment made by Mrs. Shannon to the appellant bank. In our judgment the trial court properly concluded that the assignment in question was merely an assignment of a right to collect moneys, and as such did not affect or concern the real estate. Appellants in their brief refer us to the case of *Rees* v. *Lowy,* 57 Minn. 381, 59 N. W. 310, wherein the Supreme Court of Minnesota held, among other things, that a leasehold interest in land for more than one year cannot be surrendered any more than it can be created by parol. If this question were before us, the doctrine asserted by that court might be of valuable assistance, but the question is not presented here; nor was the question presented to the Minnesota court under the same conditions as those set forth in the record of this case.

3. As a general proposition of law it may be stated that until the debtor receives notice of an assignment or until he has knowledge of such facts concerning the same as are sufficient to put him on inquiry, he may deal with the assignor as though no assignment had been made. (*Hogan* v. *Black,* 66 Cal. 41, 4 Pac. 943; *Leahi* v. *Dugdale,* 34 Mo. 99; *Deach* v. *Perry,* 53 Hun, 638, 6 N. Y. Supp. 940; *Com.* v. *Sides,* 176 Pa. 616, 35 Atl. 136; *Merrick* v. *Hulbert,* 15 Ill. App. 606; *Laughlin* v. *District of Columbia,* 116 U. S. 485, 6 Sup. Ct. 472, 29 L. Ed. 701; *De Baun* v. *Davis,* 1 Ky. Op. 281.)

4. Concluding, therefore, that the record fails to establish notice, either actual or constructive, to respondents, it follows that respondents here were entitled to interpose and establish such defense or defenses as would have been maintainable had the action been brought by the lessor, Mrs. Shannon.

5. In our judgment, the record discloses acts and

conduct on the part of Mrs. Shannon, the lessor and assignor, as to amply support the finding of the trial court to the effect that she had consented to a release of respondents from their obligations under the lease. The record here discloses many things which go to refute the idea that either the lessor, Mrs. Shannon, or her assignee, the Washoe County Bank, continued to regard respondents as her lessees after the date of the last payment of rent by respondents. Sasselli, who testifies to having taken over the lease and premises from respondents, relates in his testimony of his having gone to the private residence of G. H. Taylor, the cashier of the bank, and there making payment on the rent. He says he complained to Taylor of the amount of the rent and told him he could not pay it. He says he asked for a reduction of the rent and that the cashier replied to the effect that he would take the matter up with Mrs. Shannon. There was no mention made at that time by Taylor as to respondents, the original lessors, nor do they appear to have been referred to or looked to by the cashier on the question of reduction or change of terms.

In a letter addressed to one of the respondents, the lessor declared him as her agent to negotiate with other parties to lease the premises. In another communication to the same party, she spoke of letting the premises to others on terms different from those contained in the original lease to respondents. The testimony of the witness Yori, which is uncontradicted, establishes communication between himself and the lessor relative to his becoming a lessee of the ranch independent of respondents. The testimony of Sasselli and Yori establishes that the former left the premises in question and the latter, after communicating by letter with Mrs. Shannon, went on the premises in May, 1910. During the interim between the departure of Sasselli and the occupancy of Yori, the ranch appears to have been unoccupied. Yori testifies to his having written to the lessor, Mrs. Shannon, asking if she would rent the premises to him. He further testifies that in answer

to this communication "she wrote herself that I could go on there for so much money, and I was just going on from month to month." The testimony of Sasselli and Yori establishes the payment of rentals to the Washoe County Bank as the assignee of the lessor and to the lessor herself. From the testimony of all of the parties it is established that Yori occupied the premises and paid the rental for a number of months, all of which was with the knowledge and assent of the lessor and pursuant to her authority as related in the testimony of Yori.

The acts and conduct of the lessor, Mrs. Shannon, running through all of these transactions, as related in the record, were sufficient, in our judgment, to constitute an estoppel sufficient to defeat an action by the lessor against her lessees, respondents here, for the collection of the rentals claimed. That which would constitute an estoppel as to a lessor in an action against his lessees for the collection of rent is of equal effect as to the assignee of a lessor where the lessees are not chargeable with notice of the assignment.

The record as it is before us is, in our judgment, sufficient to warrant the trial court in finding that the lessor, Mrs. Shannon, did not look to respondents for the rental, and did not hold them responsible for the same after the 1st day of September, 1909. The acts of Shannon as related in the record were to our minds so inconsistent with the subsisting relation of landlord and tenant as to convey the idea that she recognized the surrender of the leasehold by respondents. Indeed, there is much in the record that goes to establish acquiescence by the assignee in the acts of the lessor in recognition of the surrender of the leasehold to third parties.

6–8. It is asserted as a proposition of law that where a landlord grants a new lease to a stranger with the assent of the tenant during the existence of an outstanding lease, and the tenant gives up his own possession to the stranger who thereafter pays rent, or where in any

other way a new tenant is by agreement of the tenant and the landlord substituted and accepted in place of the old, there is a surrender by operation of law. (*Commercial Hotel Co.* v. *Brill,* 123 Wis. 638, 101 N. W. 1101; *Hawthorne* v. *Coursen,* 18 Misc. Rep. 447, 41 N. Y. Supp. 995; *Bowen* v. *Haskell,* 53 Minn. 480, 55 N. W. 629; *Weiner* v. *Baldwin,* 9 Kan. App. 772, 59 Pac. 40; *In Re Clothing Co.,* 230 Fed. 681; *Triest* v. *Goldstone,* 173 Cal. 240, 159 Pac. 715; *Realty Co.* v. *Cooke,* 138 N. Y. Supp. 99.)

The record establishes beyond all doubt that the demised premises here known as the Alexander Ranch was occupied and the rentals paid by parties other than respondents. The occupancy of these third parties and the payment of the rental by them was known and acknowledged by Mrs. Shannon, the lessor. It was proper for the trial court to consider these facts, if for no other purpose than as circumstances tending to establish the acquiescence of the lessor in the surrender of the premises by respondents. (*Bedford* v. *Terhune,* 30 N. Y. 453, 86 Am. Dec. 394; *Mulvey* v. *Charter,* 174 Ill. App. 417.) The release claimed being one by operation of law rather than by express surrender, it was proper for the trial court to consider such facts as would establish the intention of the parties. (*Welcome* v. *Hess,* 90 Cal. 507, 27 Pac. 369, 25 Am. St. Rep. 145; *Triest* v. *Goldstone, supra.*)

Finding No. 5 of the trial court is as follows:

"Fifth—That some time during the month of June, 1909, the defendants Campbell and Watton delivered up the possession of the premises described in said lease to one Sasselli and at said time notified one A. C. Frohlich, an employee of the plaintiff, and the person to whom the said defendants had been accustomed to pay said rentals, that the said defendants had turned over said premises to said Sasselli, and that the said Sasselli would thereafter pay the rental to become due on the said lease; that said Sasselli continued for some

time in the possession of said premises and thereafter made at least one payment of rent to the plaintiff as the agent for the said L. E. Alexander Shannon."

Error is assigned to the action of the trial court in making the foregoing finding. It is contended that this finding is erroneous, for the reason that the same is unwarranted by the evidence in the case; and for the reason that it is not shown that the defendant delivered up the possession of the premises described in the complaint to one Sasselli; and for the reason that the evidence does not show that the plaintiff or Mrs. Alexander Shannon was ever notified or that either of them was ever notified of such delivery, or that A. C. Frohlich, mentioned in this finding, was ever notified thereof. Error is further contended for as to this finding for the reason that it is not shown that the said A. C. Frohlich had any authority to accept said notification or ever did accept the same or was at any time the person to whom defendant had been accustomed to pay the rentals; and for the further reason that it is not shown in the evidence that the plaintiff or the said Mrs. Alexander Shannon, or either of them, were ever notified that said defendants had turned over the premises to Sasselli, and that he would pay the rental to become due on said lease.

9. In our judgment, the record supports the finding. The testimony of Watton and Sasselli is to the effect that in the bank some time about June 15, 1909, the former, in the presence of the receiving teller, A. C. Frohlich, and in the presence of Sasselli, made the statement:

"Mr. Frohlich, Mr. Sasselli has taken the lease off of our hands and will hereafter pay the rent on that property."

At that time Watton, the respondent, according to his statement, turned the lease over to Sasselli. This is also testified to by the witness Sasselli. The record further supports this finding to the effect that Frohlich, as receiving teller, had been accustomed to receive the rent from Watton. The record also establishes that

from and after this transaction in the bank Sasselli occupied the leased premises and paid rent to both Mrs. Shannon, the lessor, and to Mr. Taylor, the cashier of the appellant bank.

We do not assume to say that the transaction in the bank, wherein Watton made the declaration to the receiving teller that Sasselli was to take the lease off their (respondents') hands, and would pay the rent, was sufficient to constitute notice to the appellant bank or to the lessor. Nor do we assume to determine that the receiving teller of the bank could in any wise bind the bank, even though he acquiesced in the transfer and surrender. But if subsequent acts following in uninterrupted sequence indicated complete acquiescence by the appellant in the surrender attempted to be made in the bank; if from the date of the colloquy in the bank between Watton, Sasselli, and Frohlich, the lessor, as well as the appellant as her agent, no longer looked upon the respondents as tenants under the lease; if from that date the acts of the lessor and her assignee, the appellant, were so inconsistent with the subsisting relation of landlord and tenant as to convey the idea that they and each of them recognized the surrender of the leasehold on the occasion of the Watton-Frohlich-Sasselli transaction—then the finding of the court in this respect is not error.

It might be said with propriety, we think, that this record presents a series of acts on the part of the lessor, Mrs. Shannon, as well as on the part of her assignee, the appellant here, continuing from the date of the transaction in the bank, as testified to by the respondent Watton, no one of which, taken alone, would constitute acquiescence on the part of appellant or on the part of its assignor, Mrs. Shannon, in the surrender of the leasehold, but the whole of which, taken together, was sufficient to estop the lessor, Mrs. Shannon, from denying her acquiescence in the surrender of the leasehold and her recognition of third parties as tenants under a separate lease. If the respondents here had received actual

notice of the assignment of the rentals made by the lessor to the appellant bank, or if they had been chargeable with notice· under the law, then a different view might be taken of the acts and conduct of the lessor. As we view it, she, by reason of her acts and conduct, would have been estopped from prosecuting a suit against the respondents for the unpaid rentals. But where the lessees, respondents here, were not chargeable with notice as to the assignment, then, as we have already stated, they had a right to prove and rely upon the acts and conduct of their lessor; and that which constituted an estoppel as to her was of equal effect as to appellant, her assignee.

10. The evidence produced before the trial court, as we find it in the record, was to no slight extent conflicting. Every fact presented in the case was, as disclosed by the record, met by some conflicting fact or circumstance; but out of this condition the trial court, having heard the evidence· and viewed the witnesses upon the stand, and having had opportunity to observe their conduct and demeanor and all other things that properly go with the active trial of a case, determined the matter, after careful consideration, by judgment in favor of respondents. The determination and judgment of the trial court is supported by substantial evidence; and, in view of the unvarying rule of this court, such determination and conclusion should not be disturbed. The view that we have taken of the case under the law as we deem it applicable disposes of the errors assigned as to the admission by the trial court of certain testimony. No error was committed in this respect.

In view of the findings of the trial court and in view of the conclusion reached, the newly discovered evidence asserted by appellant in furtherance of its motion for a new trial would not have produced a different result. (*Oberlander* v. *Fixen*, 129 Cal. 690, 62 Pac. 254.)

The judgment and order appealed from are sustained.

It is so ordered.

COLEMAN, J., dissenting:

I dissent.

The complaint in this case alleges that Mrs. Shannon and the defendants entered into an agreement of lease of the ranch in question for a period of five years, at a monthly rental of $66.75, payable in advance on the first day of each month during the term of said lease, which the defendants jointly and severally agreed to pay, and that there was due and unpaid on account thereof the sum of $801, and that Mrs. Shannon assigned her interest in the lease to plaintiff on June 24, 1909. The answer admitted the making of the agreement of lease, and pleaded as affirmative defenses two transactions, one of which will be alluded to as the Sasselli (Cassennelli) transaction, and the other as the Yori transaction. The Sasselli transaction took place in the banking house of plaintiff on June 15, 1909, it being contended by defendants that at that time and place an agreement was entered into by and between Mrs. Shannon, the lessor, and the defendants, the lessees, whereby it was mutually understood and agreed that the defendants might assign their interest in the lease to one Sasselli, and that pursuant thereto the said Sasselli immediately took over the rights and assumed the liabilities under said lease, by which transaction it is asserted defendants were released by operation of law. I do not think the finding of fact which the court made as to this transaction can be construed so as to sustain the contention; and, as I understand the prevailing opinion, it is not contended that such an agreement was ever made, but on the other hand it is said that Mrs. Shannon thereafter acquiesced in what was done, and must therefore be bound. The finding of the court as to this transaction reads:

"That some time during the month of June, 1909, the defendants Campbell and Watton delivered up the possession of the premises described in said lease to one Sassanelli, and at said time notified one A. C. Frohlich,

an employee of the plaintiff, and the person to whom the said defendants had been accustomed to pay said rentals, that said defendants had turned over said premises to said Sassanelli, and that the said Sassanelli would thereafter pay the rental to become due on the said lease; that said Sassanelli continued for some time in the possession of said premises, and thereafter made at least one payment of rent to the plaintiff as the agent for the said L. E. Alexander Shannon."

Only two witnesses were called as to the Sasselli transaction, and they were Sasselli and the defendant Watton. They were both called by defendants, and their evidence is substantially the same; hence we quote from Watton's testimony only. After some preliminary matters had been covered, the examination proceeded as follows:

"Mr. Salisbury—Q. Now, Mr. Watton, go ahead and state as nearly as you can just how Mr. Cassennelli (meaning Sasselli) came to be in possession (of the ranch in question), what was done in reference to it, and with reference to you turning possession over to him, and how it was done? A. Well, Mr. Cassennelli came to us, and he wanted the ranch, and we took him down to the Washoe County Bank and introduced him to Mr. Frohlich (the receiving teller), and I believe that he consulted some lawyer before to get this lease of ours.

"Mr. Salisbury—Q. Just state what you know. A. He came down and wanted this lease, and he would not take the place until he got this lease, so I handed him the lease, and took him down and introduced, at least took him down and gave him the lease in front of Mr. Frohlich, and I introduced him to Mr. Frohlich, and I says, 'This is Mr. Cassennelli,' and one thing and another, and handed him this lease, and I says to Mr. Frohlich, 'that this gentleman would now pay all rents from now on,' and that was understood right there at the window.

"Q. Did Mr. Frohlich say anything? A. I can't remember.

"Q. Did you make it clear to Mr. Frohlich that you had turned over the lease?　*　*　*

"Q. State as nearly as you can what was said in the presence of Mr. Frohlich, and what was stated by you, Mr. Cassennelli, and Mr. Frohlich in the Washoe County Bank.    A. Well, I introduced Mr. Cassennelli to Mr. Frohlich, and I said, 'Mr. Frohlich, Mr. Cassennelli has taken the lease off of our hands and will hereafter pay the rent on that property.' And now as far as anything else, I don't remember of anything else coming up, and I don't know now at the time just what else was said.

"Q. When you speak of the lease being turned over, you refer to the lease which you had from Mrs.' Shannon?    A. From Mrs. Shannon?

"Q. Yes.    A. Yes, sir.

"Q. You just delivered that lease to him?    A. Yes, sir; to Cassennelli.

"Q. You just turned the lease over to him?    A. Yes, sir.

"Q. In the Washoe County Bank.    A. Yes, sir.

"Q. In the presence of Mr. Frohlich?    A. Yes, sir.

"Q. Do you know whether after that time Mr. Cassennelli continued to pay any rent, Mr. Watton?    A. Why, I had a statement from him.

"Q. Well, of your own knowledge?    A. Not of my own knowledge; no, sir.

"Q. Up to that time had you had any talk with Mrs. L. E. Alexander Shannon with reference to your turning the ranch over to another tenant?    A. I don't remember."

This evidence is the basis for the contention that the defendants were released by operation of law.    The findings of the court upon which it is sought to sustain the contention that the defendants were released by operation of law because of the Sasselli transaction, of which defendant Watson testified, are as follows:

"That some time during the month of June, 1909, the defendants Campbell and Watton delivered up the possession of the premises described in said lease to one Sassanelli, and at said time notified one A. C. Frohlich, an employee of the plaintiff, 'and the person to whom the said defendants had been accustomed to pay

said rentals, that the said defendants had turned over said premises to said Sassanelli, and that the said Sassanelli would thereafter pay the rental to become due on the said lease; that said Sassanelli continued for some time in the possession of said premises, and thereafter made at least one payment of rent to the plaintiff as the agent for the said L. E. Alexander Shannon."

The defense interposed, being an affirmative defense, must be sustained by a preponderance of the evidence. The evidence is not conflicting on this point. All the evidence there is on the point relative to the Sasselli transaction is given in behalf of the defendants. There is nothing in the evidence to show that Frohlich undertook to enter into an agreement on behalf of Mrs. Shannon. In my opinion, Frohlich had a right to assume that Sasselli and the defendants had made a deal between themselves whereby Sasselli became a sublessee, and nothing more. But, in any event, the court made no attempt to make a finding to the effect that an agreement had been entered into by and between Mrs. Shannon, the lessor, and the defendants, the lessees, whereby it was mutually agreed that Sasselli should step into the shoes of the defendants, as such lessees. It was not even claimed that the bank had authority to make such an agreement on behalf of the lessor, the court having found simply that "the plaintiff [Washoe County Bank] acted as the agent for the said L. E. Alexander Shannon, in the collection of said rents." Such was the extent of the bank's agency. The prevailing opinion states:

"* * * That this record presents a series of acts on the part of the lessor, Mrs. Shannon, as well as on the part of her assignee, the appellant here, continuing from the date of the transaction in the bank, as testified to by respondent Watton, no one of which, taken alone, would constitute acquiescence on the part of appellant or on the part of the assignor, Mrs. Shannon, in the surrender of the leasehold, but the whole of which,

taken together, was sufficient to estop the lessor, Mrs. Shannon, from denying her acquiescence in the surrender of the leasehold and her recognition of third parties as tenants under a separate lease."

This statement, I take it, is in accord with the view that the transaction in the bank did not amount to an agreement for the assignment by defendants of their lease to Sasselli, for otherwise there is no occasion to consider ratification by Mrs. Shannon, or conduct on her part amounting to acquiescence, or justifying an estoppel. It is upon the point concerning which I have just quoted that I differ radically with the majority of the court. I have not been able to find in the record one scintilla of evidence upon which to base such a conclusion, nor was such evidence pointed out by counsel. Since, to my mind, the evidence on this point is controlling, let us review the testimony from the time of the transaction in the bank, testified to by defendant Watton, which was on June 15, 1909, up to January 19, 1910. The evidence shows that the court found that, subsequent to the transaction of June 15, just mentioned, and on the 24th day of said month, Mrs. Shannon assigned all her interests to the plaintiff bank. The lower court found that the defendants received no notice of this assignment, and the evidence sustains the finding on that point.

In determining this case it should be disposed of on the theory that while the plaintiff has the legal right to whatever sum may be due under the lease, it cannot be held to be both the owner thereof and at the same time be the agent of Mrs. Shannon relative thereto. In other words, if they were the owners of the rents thus assigned, they were the principal, and consequently could not be an agent.

Of course, we must not lose sight of the fact that any transactions had by defendants directly with Mrs. Shannon while they had no knowledge of the assignment to the bank would protect them. Now, the fact is that

at all times the bank repudiated the alleged assignment or substitution of Sasselli; hence it is impossible that the bank could have ratified or acquiesced in the Sasselli transaction, and consequently we are driven to the necessity of inquiring if Mrs. Shannon was ever informed that Sasselli had been accepted by the bank, acting as her agent, in lieu of the defendants as a tenant under the lease. If she was not so informed, it cannot be said that she ever acquiesced in such alleged transaction. The witness Stadtmuller, assistant cashier of the bank, gave no such testimony, and Mr. Taylor, the cashier of the bank, made no allusion to any notice having been given to Mrs. Shannon of the incident. But Taylor did testify that Sasselli called at his house on the evening of September 3, 1909, to pay one month's rent on the ranch. He also testified that he then informed Sasselli that Mrs. Shannon had assigned the lease to the bank, and that the bank "don't recognize anybody but Campbell and Watton in the lease." On cross-examination, the witness testified:

"I did not consider anybody in depositing the money under the lease, or the assignment, but Campbell and Watton."

The evidence shows that on September 4, 1909, a deposit slip was made for the deposit made by Sasselli, and on that slip credit for the amount was given to Campbell and Watton, the defendants, concerning which Mr. Taylor, cashier of the bank, testified:

"Q. And so you put it [deposit] by Campbell and Watton regardless of who paid the money? A. Regardless of who paid it, because I considered them, and nobody else."

This evidence shows conclusively that the bank never recognized Sasselli as assignee of Campbell and Watton. Hence how can it be said that that institution ever acquiesced in the Sasselli transaction?

Since the bank never recognized Sasselli as an assignee of defendants, we must ascertain what Mrs. Shannon did in the way of recognizing such a transaction. Mrs.

Shannon was not called as a witness, and therefore it cannot be claimed that she gave any evidence showing ratification. Only two witnesses were called who had ever had any connection with the bank—Mr. Taylor, its cashier, and Mr. Stadtmuller, its assistant cashier. Neither of these witnesses uttered one word upon which even a suspicion could be based that the bank notified Mrs. Shannon of what had taken place in the bank on June 15, or of any payment made by Sasselli, or of anything said or done by him. There were only three other witnesses called in the case, viz, Sasselli, Watton, and Yori. The testimony of Yori was confined to the Yori transaction, which took place in the spring of 1910, more than eight months after the Sasselli transaction, and hence gave no evidence whatever relative to the transaction of June 15. Sasselli said nothing whatever about giving notice to Mrs. Shannon of the incident in the bank of June 15, nor did he give a particle of evidence tending to show that that incident was brought to the knowledge of Mrs. Shannon by him.

There is left only one witness from whose testimony we must find that knowledge of the bank incident was brought to the attention of Mrs. Shannon. That witness is Watton. If he fails to furnish the evidence, then none can be found to sustain the contention that she had such knowledge as would form the basis of acquiescence. He testified to the incident in the bank and to his negotiations with Sasselli leading up to it, but nowhere does he say he ever notified Mrs. Shannon of that incident. From his standpoint, he and his codefendant ceased to be interested in the lease on June 15, 1909. Why, then, should he have done any act which could have, in the least, brought him in touch with circumstances showing acquiescence on the part of Mrs. Shannon? Most naturally no such circumstance came under his observation. He does not testify that he wrote to Mrs. Shannon, or heard from her, directly or indirectly, or saw her until January 19, 1910, more than seven months after the incident in the bank. On the

day mentioned, Mr. Watton went to see Mrs. Shannon, who was living in Oakland, Cal., and at that time the subject of other tenants for the ranch was discussed; but, so far as appears, nothing whatever was mentioned about the Sasselli transaction. On January 29, 1910, Mrs. Shannon wrote to Mr. Watton about procuring another tenant for the ranch, and in that letter she says: " *   *   * The man on the ranch to remain until March." It is contended that this shows knowledge on the part of Mrs. Shannon of the Sasselli transaction. I confess I cannot imagine just what she meant by that phrase, but one thing is certain—she could not have been alluding to Sasselli, for the reason that he had abandoned the ranch two or three months before, and no one was on the ranch at the time she wrote the letter. Hence we cannot escape the conclusion that whatever information Mrs. Shannon received from Watton on January 19 concerning the Sasselli transaction, if she had any, was not accurate if she assumed that Sasselli was still on the ranch, and therefore she cannot be held to have ratified the bank transaction.

I therefore conclude there was no release by operation of law because of what took place in the bank on June 15, 1909; and assuming that defendants were released by the Yori transaction, plaintiff is entitled to the unpaid rent from July 1, 1909, up to the consummation thereof, less the amount paid by Sasselli.